UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK RIVERA JR., CHRISTOPHER GONZALEZ, ARIS GUERRERO, ASHDEN RUSSELL, JESSE RAMOS, individually, and on behalf of other members of the general public similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>JELD-WEN, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>                              Defendants. | Case No.: 21-cv-01816-AJB-AHG<br><br>**ORDER:**<br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS; and**<br><br>**(2) DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**(Doc. No. 22)** |

Presently pending before the Court is Defendant Jeld-Wen, Inc.'s ("Defendant") partial motion to dismiss and/or strike Plaintiffs' Patrick Rivera Jr., Christopher Gonzalez, Aris Guerrero, Ashden Russell, and Jesse Ramos (collectively, "Plaintiffs") Second Amended Complaint ("SAC"). (Doc. No. 22.) The motion is fully briefed, and the matter is suitable for determination on the papers in accordance with Local Civil Rule 7.1.d.1. Upon consideration of the motions and the parties' arguments in support and opposition, Defendant's partial motion to dismiss is **GRANTED IN PART AND DENIED IN PART**, and Defendant's partial motion to strike is **DENIED AS MOOT**.

1

## I.   BACKGROUND

On February 18, 2022, Plaintiffs Patrick Rivera Jr., Christopher Gonzalez, Aris Guerrero, Ashden Russell, and Jesse Ramos, all former employees of Jeld-Wen, Inc., filed a Second Amended Complaint against Defendant for: (1) failure to pay overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wage violations; (5) waiting time penalties; (6) itemized wage statement penalties; (7) failure to reimburse expenses; (8) violation of California Business and Professions Code §§ 17200 et seq. ("UCL"); and (9) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b ("FCRA"). (*See generally* SAC.) The SAC realleges all claims previously dismissed by this Court. (*Compare* Plaintiff's First Amended Complaint ("FAC") *with* SAC; *see also* Doc. No. 20.) Defendant now seeks to dismiss Plaintiffs' seventh, eighth, and ninth causes of action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or, in the alternative, to partially strike Plaintiffs' ninth cause of action pursuant to Federal Rule of Civil Procedure 12(f). (*See generally* Doc. No. 22.)

## II.   MOTION TO DISMISS

### A.   Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated*

2

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002), *superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110–325, §§ 4(a), 8, 122 Stat. 3555.

**B.    Discussion**

**1.    Claims Two and Three: Unpaid Meal and Rest Period Premiums**

The Court previously dismissed Plaintiffs' second and third causes of action with leave to amend and instructed Plaintiffs to include specific instances of the alleged missed meal and rest periods. (Doc. No. 20 at 17.) The SAC now alleges facts supporting specific instances of missed meal and rest periods as to each named Plaintiff except Plaintiff Russell. (SAC ¶¶ 73, 84.) For example, the operative complaint now references one week's time when each of Plaintiffs Rivera, Gonzalez, Guerrero, and Ramos allegedly suffered shortened meal periods while waiting in line to clock out. (*Id.* ¶ 73.) However, it is not necessary that each plaintiff seeking individual relief in a putative class action comport with the pleading requirements of Rule 8. *See generally Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) (acknowledging the district court acted properly by evaluating the case in its entirety rather than each plaintiff's individual claim(s)); *but see Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840 (9th Cir. 2000) (holding all fifty-one named plaintiffs asserting individual claims in a class action must each plead the "operative facts" giving rise to such claims).

Here, Plaintiff Russell has alleged he, like the other named Plaintiffs, suffered "short and/or interrupted meal periods [while] waiting in line to clock in and out . . . and answering work related questions from supervisors and coworkers" while employed by Defendant. (SAC ¶ 73.) However, instead of alleging "actual dates, or even one week," (Doc. No. 20

3

at 17), in conformity with his co-Plaintiffs, Plaintiff Russell's allegations include only an apparent allegation of "three times per week," (SAC ¶ 73). Plaintiff Russell further alleges he "was not provided a single off-duty rest period due to the heavy workload, and was not allowed to leave the premises during rest periods." (SAC ¶ 84.) This is sufficient to support a reasonable inference for the Court to find Defendant violated California Labor Code §§ 226.7 and 512(a). *See Varsam v. Lab'y Corp. of Am.*, 120 F. Supp. 3d 1173, 1178 (S.D. Cal. 2015) ("[C]ourts have held that if an employer makes it difficult for employees to take a break or undermines a formal policy of providing meal and rest periods, there are sufficient grounds to find a violation of the California Labor Code."). Thus, the Court finds Plaintiffs have sufficiently pled claims for missed and/or unpaid meal and rest periods.

### 2.    Claim Five: Willful Failure to Pay

As a preliminary matter, Plaintiffs' Labor Code §§ 201 and 202 claims survived Defendant's first motion to dismiss, though this Court dismissed Plaintiffs' § 203 claim. (Doc. No. 20 at 18.) The SAC does not allege new or additional facts as to this claim that would warrant a different disposition. *See, e.g.*, *Madrid v. Bank of Am. Corp.*, No. 3:11-cv-0077 AJB (WVG), 2011 WL 2729429, at *3 (S.D. Cal. July 13, 2011) ("Inasmuch as the four causes of action in Plaintiff's SAC are those set forth in the FAC, the analysis set forth in the Court's previous order dismissing the FAC remains applicable."). Some showing that Defendants lacked good faith in allegedly failing to pay Plaintiffs their wages at termination is required for Plaintiffs' § 203 to survive the instant motion. (Doc. No. 20 at 18); *see* 8 Cal. Code Regs. § 13520(a) (defining "willful" as used in § 203 to mean the absence of good faith).

Here, Plaintiffs again fail to plead facts that Defendant acted willfully in failing to pay Plaintiffs their wages after their respective separations from Defendant's employ. Accordingly, the Court **DISMISSES** Plaintiffs' § 203 claim **WITHOUT LEAVE TO AMEND**.

### 3.    Claim Six: Accurate, Itemized Wage Statements

California law requires employers furnish employees with accurate, itemized wage

4

statements. Cal. Lab. Code § 226(a). In total, § 226(a) requires nine data points to appear on a wage statement. *Id.* In pertinent part, § 226(a)(8) provides that employers must include the "name and address of the legal entity that is the employer" on all wage statements furnished to employees. This requirement is unambiguous. *See Willner v. Manpower*, 35 F. Supp. 3d 1116, 1129 (N.D. Cal. 2014) ("Section 226(a)(8) expressly requires the name and address of the employer to be written on the wage statement itself."). Moreover, this requirement can be satisfied by including any listed name of the company, "even if it is not the complete or registered name, so long as it is not confusing or unintelligible." *Davidson v. O'Reilly Auto Enters. LLC*, No. ED CV 17-00603-RGK (AJWx), 2017 WL 8288042, at *3 (C.D. Cal. Oct. 13, 2017) (citing *Elliot v. Spherion Pac. Work, LLC.*, 572 F. Supp. 2d 1169, 1179–80 (C.D. Cal. 2008) (including abbreviations of the entity's name(s)); *see also Perez v. DNC Parks & Resorts at Asilomar, Inc.*, No. 1:19-cv-00484-DAD-SAB, 2022 WL 411422, at *8 (E.D. Cal. Feb. 10, 2022) (generally recognizing an employer's use of an abbreviation of the entity name on wage statements as an insufficient basis for a § 226(a)(8) injury allegation).

Plaintiffs now claim injury arising from wage statements that did not include "the correct name of the legal entity that is [Defendant]." (SAC ¶ 104.) However, the SAC does not include the name or address that appeared on Plaintiffs' wage statements. Nor does the SAC include any other details which would assist the Court in determining why the name included on the wage statements was purportedly incorrect. *See Finder v. Leprino Foods Co.*, No. 1:13-CV-2059 AWI-BAM, 2015 WL 1137151, at *3 (E.D. Cal. Mar. 12, 2015) (citation omitted) (dismissing with leave to amend the plaintiff's § 226(a)(8) claim and requiring "why the name . . . and address of the employer was incorrect".) Thus, the Court **DISMISSES** Plaintiffs' sixth cause of action **WITH LEAVE TO AMEND**.

### 4.   Claim Seven: Unreimbursed Business Expenses

The Court previously determined Plaintiffs had failed to sufficiently specify how "specialty footwear" was both a requirement of their employment and how they were denied reimbursement for the same. (Doc. No. 20 at 21); *see generally* Cal. Lab. Code

5

§ 2802. Plaintiffs had also failed to specify why the footwear was a "necessary expense" under Labor Code § 2802. (Doc. No. 20 at 21.) A "necessary" expense is one "incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802(a). Moreover, "[a]scertaining whether an expense is 'necessary' 'depends on the reasonableness of the employee's choices.'" *Herrera v. Zumiez*, 953 F.3d 1063, 1077 (9th Cir. 2020) (quoting *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007)).

Plaintiffs now assert Defendant maintained a uniform and/or dress code requiring "specialty footwear"—steel-toed boots—and that the boots were bought within the scope of § 2802 by Defendant's written "safety policies." (SAC ¶ 111.) Moreover, Plaintiffs argue Defendant "had reason to know that [Plaintiffs and the putative class] incurred" the expense of purchasing and maintaining the steel-toed boots because of such policies. (Doc. No. 24 at 14); *see generally Dawson v. Hitco Carbon Composites, Inc*, No. CV16-7337 PSG (FFMx), 2017 WL 7806358, at *6 (C.D. Cal. May 5, 2017) (holding as sufficiently pled an allegation of "not fully reimbursed" expenses incurred for dress-code related requirements, "including the costs of purchasing protective footwear"). In opposition, Defendant rejects Plaintiffs' claim that the boot requirement necessarily meant that each Plaintiff was required to buy them. (Doc. No. 25 at 8.) Defendant further asserts Plaintiffs fail to allege a requirement to purchase and maintain the boots, any expenses incurred, and how Plaintiffs were then denied reimbursement for such expenses. (Doc. No. 25 at 7.)

Plaintiffs rely on *Dawson* in support of finding the boots were a "necessary" purchase: Plaintiffs allege "Defendant required Plaintiffs . . . to purchase steel-toe boots in order to comply with Defendant's safety policies." (SAC at ¶ 111.) The plaintiffs in *Dawson* alleged similar facts that survived a motion to dismiss. *Dawson*, 2017 WL 7806358, at *6 ("Plaintiff[s] allege [they] incurred necessary business-related expenses . . . not fully reimbursed by Defendant, such as . . . costs incurred to comply with Defendant's dress code, including the costs of purchasing protective footwear."). However, the SAC in the instant case only addresses the boots being within the scope of § 2802, one of three prongs of this claim previously dismissed as insufficiently pled. (Doc. No. 20 at 21.)

Plaintiffs again fail to address the actual costs they incurred, if any at all, to purchase the boots or how they were denied reimbursement for the same. The Court disagrees with Plaintiffs' contention the previous order did not require such facts. (*Compare* Doc. No. 20 at 21 ("The Court finds Plaintiffs have failed to sufficiently specify how they were . . . denied reimbursement for the usage, and what expenses they incurred related to the footwear.") *with* Doc. No. 24 at 14 ("[T]he Court Order makes no such specification[.]").)

Plaintiffs also allege injury from Defendant's failure to reimburse for the *maintenance* of the boots. (SAC ¶ 111.) Plaintiffs' reliance on *Dawson* to support this allegation is misplaced. In *Dawson*, the plaintiffs did not claim injury from the *maintenance* of the items required under the defendant's dress code, only the unreimbursed purchase thereof. *Dawson*, 2017 WL 7806358, at *6. Here, Plaintiffs allege they "were not fully reimbursed by Defendants [for] the purchasing *and maintenance* of specialty footwear[.]"). (SAC ¶ 111 (emphasis added).) However, Plaintiffs make no mention of where or how Defendant required the maintenance of the boots. Rather, the SAC asserts Defendant required "Plaintiffs and other class members to *purchase* steel-toe boots . . . to comply with Defendant's safety policies." (*Id.* (emphasis added).) Moreover, Plaintiffs have not alleged any facts detailing the actual expenses they incurred to maintain the boots, nor any attempt by Defendant to reimburse those costs. *See Ellsworth v. Schneider Nat'l Carriers, Inc.*, No. 2:20-cv-01699-SB (SPx), 2020 WL 8773059, at *9 (C.D. Cal. Dec. 11, 2020) (dismissing plaintiffs' § 2802 claim because the "SAC fails to state if [the plaintiffs] ever purchased . . . the shoes . . . or if the [plaintiffs] asked for reimbursement but were denied").

Thus, the Court **DISMISSES** Plaintiffs' seventh cause of action **WITH LEAVE TO AMEND**.

### 5.    Claim Eight: Inadequate Legal Remedies

In its previous order, the Court dismissed Plaintiffs' eighth cause of action and emphasized that a claim for equitable relief under the UCL must plead inadequate legal remedies at law. (Doc. No. 20 at 22.) As amended, Plaintiffs now assert the remedies available to them under the California Labor Code are inadequate because of its three-year

statute of limitations period as compared with four years under the UCL. (SAC ¶ 120; *see also* Doc. No. 24 at 18.) Plaintiffs argue the shorter limitations period deprives them of "receiving full and complete relief" for the harms alleged. (*Id.*) Defendant, in turn, rejects Plaintiff's theory that statutory limitations are a basis for inadequacy and argues Plaintiffs' assertion to the contrary "is fatal to their UCL claim." (Doc. No. 25 at 10; *see also* Doc. No. 22-1 at 16.) The Court first considers the applicable statutes of limitations and then the merits.

Plaintiffs' claims for unpaid overtime under Labor Code §§ 510 and 1198, missed meal and break periods under §§ 226.7 and 512(a), unpaid minimum wages under §§ 1194 and 1197, and failure to timely pay wages under §§ 201, 202, and 204 are all governed by the three-year statute of limitations in California Code of Civil Procedure § 338(a). *See generally Aubry v. Goldhor*, 201 Cal. App. 3d 399, 405–06 (1988) (finding defendant's obligation to pay overtime compensation to plaintiff was created by statute and applying the three-year limitations period under § 338(a)). A cause of action for unpaid and/or untimely paid meal break premium wages accrues "when an employer directs or improperly pressures employees to miss, shorten, or delay meal breaks in the absence of a suitable waiver or agreement[.]" *Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138, 1156 (2015).

Enforcement actions arising under the UCL must be brought "within four years after the cause of action accrued," Cal. Bus. & Prof. Code § 17208, even if the predicate statutory violation has a shorter limitations period, *Groce v. Claudat*, No. 09cv01630 BTM (WMc), 2013 WL 1828555, at *2 (S.D. Cal. Apr. 30, 2013); *accord Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1303 (S.D. Cal. 2014) ("The California Supreme Court has held that the four[-]year statute of limitations applies even if the borrowed statute has a shorter limitations period.") (*citing Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178–79 (2000)). Generally, "a UCL cause of action borrows the substantive portion of the borrowed statute to prove the 'unlawful' prong of that statute, but not the limitations procedural part of the borrowed statute." *Blanks v. Shaw*, 171 Cal. App. 4th

336, 364 (2009).

Both parties rely on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), in each party's respective analyses. Defendant relies on *Sonner* to emphasize the SAC "fails to—and indeed cannot—allege that Plaintiffs lack an adequate legal remedy" because Plaintiffs seek damages, a remedy unavailable under the UCL. (Doc. No. 22-1 at 15.) In opposition, Plaintiffs attempt to distinguish *Sonner* based on its procedural posture and its underlying facts. (Doc. No. 24 at 18.) However, Plaintiffs' argument is unavailing. *Accord Mish v. TForce Freight, Inc.*, No. 21-cv-04094-EMC, 2021 WL 4592124, at *5 (N.D. Cal. Oct. 6, 2021) (concluding *Sonner*'s federal pleading requirement that a plaintiff plead inadequate remedies in federal court is not abrogated by California Supreme Court decisions potentially suggesting otherwise in state pleadings). Accordingly, the Court need only address whether a shorter statute of limitations, when pled in the context of an alternative remedy, renders a legal remedy inadequate as a matter of law. The Court finds it does.

Plaintiffs filed the original complaint in the California Superior Court on August 9, 2021. (Doc. No. 1-7 at 4.) Plaintiffs allege an "ongoing harm that accrues with each pay period" beginning on August 9, 2017. (Doc. No. 24 at 18; *see also* SAC ¶ 11.) Plaintiffs posit "a year of violations is meaningful, and there is no adequate remedy at law past the three-year period other than the UCL." (Doc. No. 24 at 18.) In *Mish*, the plaintiff argued she lacked an adequate remedy for wage violations occurring within the year difference of the UCL and California Labor Code statutes of limitations. *Mish*, 2021 WL 4592124, at *6. The plaintiff also argued her request for injunctive relief under the UCL was not available under the Labor Code. *Id.* The court rejected both arguments, though focused its reasoning on the identical nature of the claims and relief sought under the UCL with that sought under the plaintiff's Labor Code claims. *Id.* at *6–7. Stated differently, the *Mish* court determined that a different statute of limitations does not make a remedy inadequate when the relief sought under both statutes is predicated on the same set of facts. *See Franckowiak v. Scenario Cockram USA, Inc.*, No. CV 20-8569-JFW(PVCx), 2020 WL

9

9071697, at *3 (C.D. Cal. Nov. 30, 2020) (denying relief under the UCL because "Plaintiff's UCL allegations are predicated on the identical wage and hour violations" of the Labor Code); *see also Alvarado v. Wal-Mart Assocs., Inc.*, No. CV 20-01926-AB (KKx), 2020 WL 6532868, at *3(C.D. Cal. Oct. 22, 2020) (generally holding a shorter statute of limitations period does not render a remedy inadequate for UCL purposes).

However, Defendant underscores an "intra-circuit split on the issue of whether it is appropriate to dismiss UCL claims at the pleading stage when they are based on identical facts as other claims providing the legal remedy of damages." *Eason v. Roman Catholic Bishop of San Diego*, 414 F. Supp. 3d 1276, 1282 (S.D. Cal. 2019) (internal citation omitted). Consistent with this District's recent analyses on the matter, the Court finds that plaintiffs may plead a UCL claim as an alternate remedy predicated on the same underlying facts as a separate claim for damages. *See id.* ("This Court agrees with the decisions allowing plaintiffs to plead a UCL claim as an alternative legal remedy."); *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1088 (S.D. Cal. 2021) (affirming the alternate remedy analysis of *Eason* as the prevailing view within the Southern District of California); *see also Yeomans v. World Fin. Group Ins. Agency, Inc.*, No. 19-cv-00792-EMC, 2022 WL 844152, at *8 (N.D. Cal. Mar. 22, 2022) ("Thus, Plaintiffs' request for restitution under the UCL as a remedy in the alternative to legal remedies under the labor code is both sufficient and permissible at the pleading stage."); *Krommenhock v. Post Foods, LLC*, No. 16-cv-04958-WHO, 2020 WL 6074107, at *1 (N.D. Cal. Sept. 29, 2020) (same).

Accordingly, when equitable relief is sought under the UCL in tandem with damages under a "borrowed" statute, the Court finds that the shorter statutory limitations period of the "borrowed" statute renders legal remedies available under that statute inadequate. Thus, the Court finds Plaintiffs have adequately pled an inadequate remedy at law and therefore **DENIES** Defendant's motion to dismiss Plaintiff's eighth cause of action.

### 6.    Claim Nine: Fair Credit Reporting Act Violations

The Court previously dismissed Plaintiffs' ninth cause of action because the FAC failed to allege a concrete injury, a threshold requirement to establish Article III standing.

(Doc. No. 20 at 24); *see generally Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations and citations omitted). Finding this threshold unsatisfied, the Court did not analyze the remaining two elements. *See generally id.* (internal quotations and citations omitted) (further requiring a "causal connection between the injury and the conduct complained of," and that a favorable decision will "likely" redress the injury). The Court now addresses the three elements in turn.

### a.    Injury-in-fact

The Court previously addressed the Ninth Circuit's recognition of confusion as a concrete injury within the context of an alleged FCRA disclosure violation. (Doc. No. 20 at 23–24.) As amended, Plaintiffs now allege the disclosure form did not inform of certain rights granted by the FCRA, and that the disclosure language itself confused them. (SAC ¶¶ 130, 131, 133.) Plaintiffs argue that confusion itself is sufficient to satisfy the injury element of standing. Defendant does not challenge Plaintiffs' theory of confusion-as-an-injury, though argues the SAC avers insufficient facts to allege the putative class suffered confusion. (Doc. No. 25 at 8.) Defendant also argues Plaintiffs' assertion that they *may not* have signed the forms makes any purported injury too speculative. (Doc. No. 22-1 at 20.)

The Court agrees with Plaintiffs' theory that confusion itself, in the context of an alleged FCRA disclosure violation, constitutes an injury-in-fact. *See Mitchell v. WinCo Foods, LLC*, 743 Fed. App'x 889, 889 (9th Cir. 2018) (mem.) (recognizing "an inference of confusion" stemming from a defendant's FCRA disclosure violation as a concrete injury for purposes of Article III standing). Accordingly, the Court finds Plaintiffs' confusion, as currently pled, satisfies the injury-in-fact element of Article III standing.

### b.    Causal Connection

The second element of standing requires that the injury allegedly suffered "be fairly traceable to the defendant's allegedly unlawful conduct[.]" *Allen v. Wright*, 468 U.S. 737, 751 (1984) (*overruled on other grounds by Lexmark Intern., Inc. v. Static Control Compons., Inc.*, 572 U.S. 118 (2014)). As applicable here, the FCRA requires clear and conspicuous disclosures be signed by the subject of a consumer report procured for

11

employment purposes. 15 U.S.C. § 1681b(b)(2)(A)(i). Such disclosures must be contained within a document consisting solely of the disclosure. *Id.* These requirements are distinct and must be analyzed separately. *See Syed v. M-I, LLC*, 853 F.3d 492, 503 ("[T]he question of whether a disclosure is "clear and conspicuous" within the meaning of Section 1681b(b)(2)(A)(i) is separate from the question of whether a document consists "solely" of a disclosure[.]")

Plaintiffs allege unclear, extraneous language in Defendant's disclosures and the inconspicuous placement of the disclosures within the document itself confused them. (SAC ¶¶ 131, 133.) In pertinent part, Defendant's FCRA disclosure language reads as follows:

> The scope of this notice and authorization is all-encompassing, however, allowing the Company to obtain from any outside organization all manner of consumer reports and investigative consumer reports now and throughout the course of your employment to the extent permitted by law. As a result, you should carefully consider whether to exercise your right to request disclosure of the nature and scope of any investigative consumer report.

(*Id.* ¶ 131.)  In support, Plaintiffs rely on *Walker v. Fred Myer*, 953 F.3d 1082 (9th Cir. 2020), to argue that including extraneous information in the disclosures violates the "standalone document" requirement of the FCRA. (*See generally* Doc. No. 24 at 20.) Plaintiffs also rely on *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019), to argue Defendant's disclosure language was unclear, (SAC ¶¶ 130, 131; Doc. No. 24 at 19), and point to the above excerpt as proof of confusing language, (SAC ¶ 131). The Court considers both inquiries in turn.

As an initial matter, Plaintiffs include information regarding inapplicable state laws under the umbrella of "extraneous information" that can render an FCRA disclosure unlawful. (SAC ¶ 130 ("[T]he purported disclosures were embedded with extraneous information, including numerous boxes of information regarding inapplicable state laws[.]".) The Court declines to consider this proposition, and in any case, finds no facts averring which state laws were allegedly included within Defendant's disclosure form. *See*

*Gilberg*, 913 F.3d at 1177 (finding the disclosure language confusing because New York and Maine consumers were given separate contact instructions). Moreover, Plaintiffs have not averred what about the excerpt they found confusing. Therefore, the Court compares the excerpt of Defendant's disclosure with the excerpts at issue in the cases cited by Plaintiffs to guide its analysis. *Accord Harden v. Air Prods. West Coast Hydrogen LLC*, No. 2:22-cv-01501-AB (ASx), 2022 WL 1115830, at *3 (C.D. Cal. Apr. 14, 2022) (finding no express allegations and/or clarifying facts regarding plaintiffs' FCRA claim, the court "look[ed] to the rest of Plaintiff's Complaint to determine whether Plaintiff ha[d] in fact alleged violations of her § 1681b(b)(2)(A)-based . . . rights").

The excerpt quoted in the SAC references an investigative consumer report. (SAC ¶ 131.) The Ninth Circuit has held limited references to investigative consumer reports within a consumer report disclosure form do not violate the FCRA's standalone disclosure document requirement. *Walker*, 953 F.3d at 1089–90 ("[I]nformation about investigative reports [] limited to disclosing that such reports may be obtained for employment purposes, and [] a very brief description of what that means . . . does not run afoul of the standalone requirement."). However, inclusion of language implicating rights other than those protected by the FCRA is extraneous information that "cannot reasonably be deemed part" of the disclosure, and therefore violates the standalone disclosure requirement. *Id.* at 1090–91. The Court finds that the limited reference to an investigative consumer report as currently pled does not render that portion of Defendant's disclosure unlawful. *Accord id.* at 1089–90.

The Court next considers *Walker* to determine whether Defendant's disclosure excerpt included separate, distinct rights which would be unlawful "extraneous information" within the context of an FCRA disclosure. In *Walker*, the defendant's FCRA disclosure language made brief mention of the consumer's right to "inspect" the files concerning them that were held by the consumer reporting agency. *Id.* at 1090. In the same paragraph, consumers were also advised of their "right to obtain a complete and accurate disclosure of the scope and nature of the investigation performed." *Id.* The court held that

13

language explaining a separate, unrelated right to review the reporting agency's files could draw the consumer's "attention away from [the] privacy rights protected by the FCRA." *Id.* (quoting *Syed*, 853 F.3d at 502). As currently pled, the SAC avers no such language. Here, Plaintiffs' excerpt of Defendant's FCRA disclosure language advises consumers to "carefully consider whether to exercise your right to request disclosure of the nature and scope of any investigative consumer report." (SAC ¶ 131.) The Court finds this excerpt is consistent with a lawful disclosure of a privacy right protected by the FCRA and suggests no other right that could divert Plaintiffs' attention. Stated differently, the Court finds there is no extraneous information in the disclosure excerpt as currently pled that would violate the standalone document requirement.

A "clear and conspicuous" disclosure is one that is "reasonably understandable" and is "readily noticeable to the consumer." *Gilberg*, 913 F.3d at 1176 (quoting *Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010)). The court may consider each prong separately. *Id.* at 1177. Plaintiffs state only that Defendant's disclosures "were not conspicuous," (SAC ¶ 130), though aver no facts to support this legal conclusion. *See generally Iqbal*, 556 U.S. at 678. Accordingly, the Court does not consider Plaintiffs' allegations of an inconspicuous disclosure. Turning to the first prong, the Court finds Plaintiffs' allegations of an unclear disclosure are also insufficiently pled.

Neither *Gilberg* nor *Walker* support Plaintiffs' claim of an unclear and/or confusing disclosure. Reliance on *Walker* is unavailing because the Ninth Circuit did not address whether certain portions of that disclosure were clear and conspicuous. *Walker*, 953 F.3d at 1091 (remanding to the district court to determine whether the first three paragraphs of the disclosure language were sufficiently clear and conspicuous under *Gilberg*). Moreover, the subject portions of the disclosure were eventually held to be sufficiently clear and conspicuous. *Walker v. Fred Meyer, Inc.*, No. 3:17-cv-1791-YY, 2021 WL 4391550, at *1 (D. Or. Sept. 24, 2021) *adopting findings and recommendations of* 2021 WL 4239988 (D. Or. Aug. 13, 2021). An analysis under the facts of *Gilberg* is similarly unavailing to support Plaintiff's allegations.

14

The disclosure form in *Gilberg* was unclear for two reasons: (1) the form contained "language that a reasonable person would not understand"; and (2) it would "confuse a reasonable reader because it combine[d] federal and state disclosures." *Gilberg*, 913 F.3d at 1177. The Court has already addressed the lack of facts averred with respect to Plaintiffs' allegations of inapplicable state laws within Defendant's disclosures. Accordingly, the Court now considers whether Defendant's disclosure, as pled, contained language a reasonable person would not understand. The Court finds that it does not.

The disclosure language in *Gilberg* differs subtly, but substantively, from the disclosure language in the instant case. As relevant here, the disputed disclosure language from *Gilberg* is as follows:

> The scope of this notice and authorization is all-encompassing; however, allowing CheckSmart Financial, LLC to obtain from any outside organization all manner of consumer reports and investigative consumer reports now and, if you are hired, throughout the course of your employment to the extent permitted by law.

*Gilberg*, 913 F.3d at 1177. There, the court focused on the defendant's use of a semicolon before "however." The semicolon left the first independent clause lacking an explanation necessary for a consumer to understand the scope of the subject notice and authorization. *Id.* (finding the "beginning of th[e] sentence does not explain how the authorization is all-encompassing and how that would affect an applicant's rights"). The semicolon also left the second independent clause an incomplete sentence without a subject. *Id.*

The language excerpted in the SAC largely mirrors the language excerpted from *Gilberg*, except a comma is placed before "however." The word "however" is a conjunctive adverb, *see generally* Bryan A. Garner, <u>The Redbook: A Manual on Legal Style</u>, 1.17a (4th ed. 2018), and placing a comma before a conjunctive adverb is grammatically incorrect, *id.* at 1.17 ("Use a semicolon to separate independent clauses if the second clause begins with a conjunctive adverb or transitional expression rather than a conjunction."). However, the Court finds that Defendant's use of "however" does not modify the first independent

clause as would a traditional conjunctive adverb. *See, e.g.*, *Styers v. Schriro*, 547 F.3d 1026, 1035 (9th Cir. 2008) (recognizing the Arizona Supreme Court's use of "however" improperly modified the test applied to the evidence at issue). Rather, a plain reading of Defendant's disclosure excerpt conveys the scope of the notice and authorization ("all-encompassing") before explaining what "all-encompassing" means ("allow[s] the Company to obtain from any outside organization all manner of consumer reports and investigative consumer reports now and throughout the course of your employment to the extent permitted by law." (SAC ¶ 131.) Such brief explanations in the FCRA disclosure are permissible. *See Walker*, 953 F.3d at 1089–90.

The Court finds the facts averred by Plaintiff as the cause of their confusion do not violate either the "clear and conspicuous" or the "standalone document" requirements of the FCRA. Stated differently, the Court does not find Defendant's disclosure excerpt to be unlawful. Therefore, the Court also finds Plaintiffs have not plausibly alleged an injury that is fairly traceable to Defendant's unlawful conduct.

### c.  Redressability

Whereas "causality examines the connection between the alleged misconduct and injury, . . . redressability analyzes the connection between the alleged injury and requested judicial relief." *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013) (citing *Allen v. Wright*, 468 U.S. at 753 n.19). Plaintiffs seek damages to redress an injury they allege was caused solely by Defendant's violations of the FCRA. (SAC ¶¶ 49–52.) This is generally sufficient to satisfy the redressability of Plaintiffs' FCRA allegations. *See Stasi v. Immediata Health Group Corp.*, 501 F. Supp. 3d 898, 927 n.9 (S.D. Cal. 2020) ("Courts have consistently found, with little or no discussion, that concrete injuries based on violations of privacy-related statutes are also particularized, fairly traceable [to the defendant], and likely to be redressed by a favorable decision."). However, Plaintiffs have not averred facts supporting their allegations that Defendant violated the FCRA, and that those violations caused Plaintiffs' injury.

Plaintiffs have not satisfied the causation element of Article III standing as to their

16

FCRA claim. Therefore, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' ninth cause of action **WITH LEAVE TO AMEND**.

## III.    MOTION TO STRIKE

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(f), the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Rule 12(f) motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic. *See Cal. Dept. of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). Motions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation. *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike. *Id.*

Moreover, "[d]ismissal of a class at the pleading stage is rare because 'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Mirkarimi v. Nev. Prop.1, LLC*, Case No. 12-cv-2160-BTM-DHB, 2013 WL 3761530, at *4 (S.D. Cal. July 15, 2013) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Thus, "[a]lthough it is not per se improper for a defendant to move to strike class allegations before the motion for class certification, most courts decline to grant such motions because the shape and form of a class action evolves only through the process of discovery." *Simpson v. Best W. Int'l, Inc.*, Case No. 3:12-cv-4672-JCS, 2012 WL 5499928, at *9 (N.D. Cal. Nov. 13, 2012) (internal citation and quotations omitted).

### B.    Discussion

17

### 1.   Extended Class Period

Defendant seeks to strike Plaintiffs' invocation of a five-year statute of limitations for the ninth cause of action. (Doc. No. 22-1 at 8.) The statute of limitations under the FCRA is the earlier of either "(1) 2 years after the date of discovery . . . of the violation; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. Defendant argues "[e]xtending the FCRA class period beyond two years would make individual issues predominate over common issues" because an FCRA violation is predicated on "an inherently individualized inquiry." (Doc. No. 22-1 at 8–9, 21.) Moreover, Defendant argues the "SAC fails to allege sufficient facts about how such a highly individualized inquiry could be maintained as a class action." (*Id.* at 22.)

Plaintiffs' SAC defines the putative FCRA Class as "[a]ll of Defendant's current or former employees and prospective applicants . . . on whom a background check was performed at any time during the period from August 9, 2016 [through August 9, 2021.]" (SAC ¶ 11.) In support of the longer limitations period, Plaintiffs argue a possible statute of limitations issue is not per se fatal to finding that a common question predominates over individual issues. (Doc. No. 24 at 24.) Plaintiffs also argue that a disposition predicated on a statute of limitations issue at this stage of pleading is premature. (*Id.* (citing *Nitsch v. Dreamworks Animation SKG, Inc.*, 315 F.R.D. 270, 308 (N.D. Cal. 2016) (internal citations omitted)).) The Court agrees with Plaintiff to the extent it is premature to strike the FCRA class allegation. However, the Court finds Plaintiffs' FCRA claims are time-barred under both limitations periods.

Plaintiffs assert *Nitsch* and prior Ninth Circuit judgments limit the impact of a statute of limitations issue on the larger question of class certification. However, invoking *Nitsch*, even in passing reference, is illuminating. Specifically, the applicable allegations in *Nitsch* only survived a second motion to dismiss because the plaintiffs had properly pleaded a theory of fraudulent concealment sufficient to toll the statute of limitations. *Nitsch*, 315 F.R.D. at 308 (recognizing the plaintiffs sufficiently pleaded one of two viable theories to toll the statute of limitations: (1) continuing violation, or (2) fraudulent concealment).

18

Plaintiffs have not alleged any theory of fraudulent concealment. Moreover, Plaintiffs appear to concede the alleged FCRA violations were initially discoverable at or before the time of employment, (SAC ¶ 129), while simultaneously arguing their "FCRA claims are not time-barred based on their employment dates[.]" (Doc. No. 24 at 24.) The Court disagrees.

As Plaintiffs note, an FCRA violation action accrues when an employer obtains the consumer report, not when the disclosure and/or authorization form(s) are signed. (*Id.*) *See Ruiz v. Shamrock Foods Co.*, No. 217-cv-06017-SVW-AFM, 2018 WL 5099509, at *6 n.6 (C.D. Cal. Aug. 22, 2018), *aff'd on other grounds*, 804 F. App'x 6557 (9th Cir. 2020). Plaintiffs allege Defendant obtained consumer reports to "evaluat[e] Plaintiffs and the other class members *for employment*." (SAC ¶¶ 129, 130 (emphasis added).) However, Plaintiffs have not averred the date when Defendant obtained the consumer reports at issue, nor whether Defendant required additional disclosures to facilitate obtaining subsequent consumer reports. *See Del Toro v. Centene Corp.*, No. 19-cv-05163-LHK, 2020 WL 6081738, at *4 (C.D. Cal. Oct. 14, 2020) ("Thus, if Plaintiff's consumer report was obtained by Defendant more than five years [before plaintiff filed the operative complaint], Plaintiff's FCRA claim is time-barred."). In so doing, Plaintiffs put the timeline of Defendant's procurement of individual consumer reports squarely at issue. The Court finds that Plaintiffs knew or should have reasonably known that consumer reports would be obtained around the time their employment commenced. *Accord Ruiz*, 2018 WL 5099509, at *6 n.6. Finding no allegations of fraudulent concealment by the Defendant, the Court now turns to whether Plaintiffs have plausibly alleged a theory of continual violation that would toll the statute of limitations, as suggested in *Nitsch*.

The continuing violation doctrine "renders an entire course of conduct actionable[.]" *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th at 1185, 1199 (2013); *accord Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 343 (2009) (California courts will apply the continuing violation theory when there is a "continuing pattern and course of [wrongful] conduct"); *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir.

1987) (recognizing the continuing violation theory applies under federal law when the defendant "inflict[s] new and accumulating injury on the plaintiff"). However, the Central District of California has previously held an FCRA disclosure injury is not a continuing violation, nor is a disclosure violation a continuing violation for statutes of limitations purposes. *Ruiz*, 2018 WL 5099509, at *6 n.6 (collecting cases).

Neither side addresses nor cites case law from the Southern District addressing the continuing violation doctrine in the FCRA context, and the Court is aware of none. Accordingly, the Court adopts the analysis of its sister court in *Ruiz*. Therefore, to successfully toll the statute of limitations under the continuing violation doctrine, Plaintiffs need to plead facts plausibly inferring either: (1) the pre-employment consumer reports were pulled *after* their employment commenced; or (2) employees were required to sign *subsequent* faulty disclosures resulting in Defendant pulling other consumer reports during Plaintiffs' employment timeline. *See, e.g.*, *Beaver v. Tarsadia Hotels*, No. 11cv1842 DMS (CAB), 2012 WL 1564535, at *9 (S.D. Cal. May 2, 2012) (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir.1981)) ("Generally, "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation."). Here, Plaintiffs' employment dates all began on or prior to July 12, 2019, more than two years before Plaintiffs filed their initial complaint. (SAC ¶¶ 18–22 (listing the starting date of each Plaintiffs' respective employment timeline as follows: July 12, 2019 (Rivera); April 24, 2017 (Gonzalez); June 20, 2019 (Guerrero); September 17, 2018 (Russell); February 4, 2008 (Ramos).) Plaintiffs aver no facts supporting a conclusion other than Defendants pulled one consumer report for each Plaintiff for pre-employment purposes. Accordingly, the Court finds Plaintiffs' FCRA action time barred.

Plaintiffs appear to concede their actual or constructive knowledge that the consumer reports at issue were pulled by the time their employment commenced. Therefore, Plaintiffs may not avail themselves of the five-year statute of limitations period under the FCRA. Plaintiffs also fail to offer a viable theory that would toll the two-year statute of limitations under the FCRA. However, the Court has **DISMISSED** Plaintiffs' ninth cause of action

and therefore **DENIES AS MOOT** Defendant's motion to strike the start date of the putative FCRA class period as August 9, 2016.

## IV.   INJUNCTIVE RELIEF

The Court previously dismissed injunctive and declaratory relief for Plaintiffs' sixth, eighth, and ninth causes of action for lack of Article III standing. (Doc. No. 20 at 26–27.) Plaintiffs again request injunctive relief for the sixth and eighth causes of action, and declaratory relief for the ninth cause of action. (SAC ¶¶ 36, 47, 49.) However, the fact remains that all named Plaintiffs are former employees and continue to lack standing for such relief. *See generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) ("[P]laintiffs no longer employed by [a defendant] lack standing to seek injunctive or declaratory relief against its employment practices."). Accordingly, the Court **DISMISSES** Plaintiffs' claims for injunctive relief under their sixth and eighth causes of action.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's partial motion to dismiss and **DENIES AS MOOT** Defendant's motion to strike.


**IT IS SO ORDERED.**

Dated:  August 9, 2022

Hon. Anthony J. Battaglia
United States District Judge